UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TODD BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03877-JMS-DML |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration,[1] | ) ) ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Todd Black applied for disability insurance benefits from the Social Security Administration ("SSA") on September 5, 2014, alleging an onset date of March 12, 2011. [Filing No. 13-2 at 12.] His application was initially denied on January 15, 2015, [Filing No. 13-4 at 2], and upon reconsideration on April 23, 2015, [Filing No. 13-4 at 9]. Administrative Law Judge Albert J. Velasquez (the "ALJ") held a hearing on February 13, 2017. [Filing No. 13-2 at 52-78.] The ALJ issued a decision on May 12, 2017, concluding that Mr. Black was not entitled to receive disability insurance benefits. [Filing No. 13-2 at 9.] The Appeals Council denied review on August 22, 2017. [Filing No. 13-2 at 2.] On October 25, 2017, Mr. Black timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The caption has been updated to reflect Ms. Berryhill's current official title.

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

# II.
## BACKGROUND

Mr. Black was 42 years of age at the time he applied for disability insurance benefits. [Filing No. 13-5 at 2.] He has completed high school and two bachelor's degrees and previously worked as a security officer. [Filing No. 13-2 at 22.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Mr. Black is not disabled. [Filing No. 13-2 at 23.] The ALJ found as follows:

- Mr. Black last met the insured status requirements of the Social Security Act through December 31, 2017. [Filing No. 13-2 at 14.]

- At Step One, the ALJ found that Mr. Black had not engaged in substantial gainful activity[3] since March 12, 2011, the alleged onset date. [Filing No. 13-2 at 14.]

- At Step Two, the ALJ found that Mr. Black had "the following severe impairments: cervical, thoracic and lumbar degenerative disease, residuals from a right shoulder acromioclavicular injury and repair, obesity with thoracic sprain and lumbar strain, and a hernia." [Filing No. 13-2 at 14.]

- At Step Three, the ALJ found that Mr. Black did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 13-2 at 15.]

- After Step Three but before Step Four, the ALJ found that Mr. Black had the RFC "to perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a). The claimant could lift and carry twenty pounds occasionally and ten pounds frequently. The claimant is able to stand and/or walk for two of eight hours and sit for six of eight hours provided the work requires no climbing of ropes, ladders or scaffolds and no more than occasional climbing of stairs or ramps, and no kneeling or crawling. The individual should avoid work at unprotected heights,

---

[2] Both parties provided a detailed description of Mr. Black's medical history and treatment in their briefs. [Filing No. 17; Filing No. 21.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Mr. Black, the Court will simply incorporate those facts by reference and detail specific facts only as necessary to address the parties' arguments.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

working around dangerous moving machinery, operating a motor vehicle or working around open flames or large bodies of water. He could not do overhead work with the right hand. He could not do repetitive forceful gripping or operate vibrating tools. The claimant could not do rapid head or neck movements." [Filing No. 13-2 at 15.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Mr. Black's RFC, the ALJ concluded that Mr. Black was incapable of performing his past relevant work as a security officer. [Filing No. 13-2 at 21-22.]

- At Step Five of the analysis, relying on VE testimony considering Mr. Black's age, education, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Mr. Black could have performed through the date of the decision. [Filing No. 13-2 at 22-23.]

## III.
### DISCUSSION

Mr. Black makes five assertions of error regarding the ALJ's decision, each of which the Court will consider in turn, as necessary.

**A. Whether the ALJ's Step Three Findings are Supported by Substantial Evidence**

Mr. Black argues that his condition meets Listing 1.04(A), specifically detailing medical evidence regarding his cervical spine impairment showing pain on palpitation, limited range of motion, decreased sensation in both upper extremities, atrophy, and muscle spasms. [Filing No. 17 at 14-16.] Mr. Black further argues that the ALJ's failure to consider the evidence most favorable to him warrants remand even if his condition does not meet the listing. [Filing No. 17 at 16.] Furthermore, Mr. Black asserts that his condition equals the listing, detailing additional evidence of his lumbar spine impairment. [Filing No. 17 at 17.] With regard to his equaling argument, Mr. Black contends that the ALJ's analysis is critically insufficient because it relies on the state agency medical consultants' assessments, which were based on a review of a limited portion of the record. [Filing No. 17 at 18.]

The Deputy Commissioner argues that substantial evidence supports the ALJ's Step Three findings and that Mr. Black has not met his burden of showing that his impairment satisfies all of the criteria to meet (or equal) the listing. [Filing No. 21 at 8.] The Deputy Commissioner notes that the ALJ cannot substitute allegations of pain or other symptoms in place of objective findings to find medical equivalence. [Filing No. 21 at 9.] The Deputy Commissioner contends that the ALJ provided a logical bridge between his conclusion that the listing was not met and the evidence showing normal muscle strength, the absence of atrophy, and negative straight-leg testing. [Filing No. 21 at 10.] Furthermore, the Deputy Commissioner argues that the ALJ's equivalence finding was supported by the state agency opinions, [Filing No. 21 at 10], and that the ALJ reviewed most of the evidence cited by Mr. Black elsewhere in the decision, is not required to mention every piece of evidence, and remedied any shortcoming of the reviewing opinions with additional RFC restrictions, [Filing No. 21 at 11-13].

In reply, Mr. Black maintains that he has demonstrated that he meets all of the requirements of the listing and that the Deputy Commissioner cannot remedy the ALJ's failure to consider the totality of the evidence by referencing the normal findings the ALJ cited or by relying on the outdated reviewing opinions. [Filing No. 22 at 3-4.][4]

In order to meet an impairment identified in the listings, a claimant must establish, with objective medical evidence, all of the criteria specified in the listing. *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of"

---

[4] Mr. Black further devotes considerable attention to rebutting an argument that the Deputy Commissioner never made – that the ALJ's Step Three error was harmless. [Filing No. 22 at 4-6.] The Deputy Commissioner was quite clear in her position that there was no error at Step Three. [Filing No. 21 at 13.]

benefits at step three). In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if they have other findings related to the impairment or have a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2003).

To establish Listing 1.04(A), the regulations require:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1.

In terms of meeting Listing 1.04, the ALJ's finding appears to be supported by substantial evidence. While Mr. Black criticizes the ALJ's analysis for failing to reference evidence that satisfies most of the criteria in the listing portion of the decision, the ALJ aptly focused on the evidentiary shortcoming. The ALJ noted that Mr. Black's "muscle strength has been listed as good and normal (Exhibits 6F at 4; 24F at 19; 35F at 3; and 37F at 4)." [Filing No. 13-2 at 15.] Indeed as noted above, in order to satisfy *all* of the criteria, Mr. Black must demonstrate "motor loss," which is further defined as "atrophy with associated muscle weakness or muscle weakness." The ALJ cited to multiple examinations in the record showing: muscle strength was "[g]ood, except for grips which are 4+ [out of five being full strength]," [Filing No. 13-11 at 65], "normal strength and sensation in [bilateral upper extremities] and [bilateral lower extremities]," [Filing No. 13-26 at 61], and five out of five muscle strength in bilateral upper and lower extremities, [Filing No. 13-

7

27 at 37]. Mr. Black does not cite to any evidence of muscle weakness. The Court's review of the record only revealed the one reference to slightly diminished grip strength. "We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citations omitted). However, the ALJ did mention the decreased grip strength in a later section of the decision. [Filing No. 13-2 at 18.] "There is no requirement of such tidy packaging, however; we read the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (unpublished) (citing *Rice*, 384 F.3d at 369; *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). While there is some support in the regulations that diminished grip strength could meet the muscle weakness criteria, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(E)(1) (referencing "grip and pinch strength" as corresponding to atrophy of hand muscles), one reference alone would not likely meet the durational requirement establishing the severity of the listing for twelve months, *see* 20 C.F.R. § 404.1525(c)(3); *see also* 20 C.F.R. § 404.1509.

Mr. Black does reference that "[u]pper extremity testing showed decreased measurements on the right when compared to the left." [Filing No. 17 at 15.] On November 8, 2012, measurements of Mr. Black's biceps and forearm did show that his right arm was reduced in size by 0.5 cm and 1.0 cm respectively when compared to his left arm. [Filing No. 13-19 at 26.] Given that Mr. Black is right handed, [Filing No. 13-2 at 18], the evidence does appear to contradict the ALJ's assertion that Mr. Black "does not have atrophy." [Filing No. 13-2 at 15.] Moreover, the measurements above and below the elbow satisfy the criteria specified in the regulations to demonstrate atrophy in evaluation of the spinal listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1,

8

1.00(E)(1). However, the regulations additionally specify that "a report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength," *Id.*, which is absent here, [Filing No. 13-19 at 24-29]. Again, the record does not appear to demonstrate the required muscle weakness to precisely meet the listing.

The Court finds Mr. Black's better argument to be that the ALJ erred in assessing medical equivalence. The ALJ states:

> State agency medical consultants concluded that the claimant does not have an impairment or combination of impairments that meet or equal a listing (Exhibits 1A and 3A). This portion of the State agency opinion closely corresponds to the objective medical evidence and is highly probative of the question of whether the claimant's impairments are of listing-level severity.

[Filing No. 13-2 at 15.] However, the ALJ concludes later in the decision that the consultants' RFC assessments that Mr. Black is limited to the light level of exertion "carries only moderate weight" because "the more recently received medical evidence indicates that the combined effect of the claimant's impairments, including his obesity, is more limiting than was originally realized." [Filing No. 13-2 at 20.] Given the updated evidence, the ALJ found that an RFC for sedentary work was more appropriate. [Filing No. 13-2 at 15.] While the ALJ's differing conclusions about the consultants' assessments are not necessarily in complete contradiction, the Court is leery of the ALJ determining that medical equivalence was not demonstrated at the time of the consultants' review, nor was it demonstrated with the updated record even though the updated record demonstrated an increasingly severe combination of impairments. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) as amended on reh'g (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125

9

(7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)).

Moreover, in addition to the combination of impairments the ALJ acknowledges necessitated additional functional restrictions, there is other evidence that the ALJ appears to have not appreciated based on the written decision. The latest consultant review by Dr. Whitley occurred on April 23, 2015. [Filing No. 13-3 at 17.] The record at that time consisted only of the medical exhibits through 9F. [Filing No. 13-3 at 12-14 (the complete record includes medical exhibits through 37F).] Among the evidence that was not included in the record or even in existence at the time of the last review was an MRI of Mr. Black's cervical and thoracic spine taken on November 9, 2015. [Filing No. 13-24 at 69 (Exhibit "31F at 26").] The ALJ referenced the MRI only by citation, noting based on his own review that "[t]horacic spine x-rays conducted on July 29, 2010, have shown multiple minor compressions (Exhibit 2F at 8) (*see also Exhibits 31F at 26*; and 37F at 3)." [Filing No. 13-2 at 18 (emphasis added).] The ALJ is accurate that x-ray imaging in 2010 showed "multiple minor compressions identified" at T8, T9 and T11. [Filing No. 13-9 at 9.] However, the updated MRI showed a disc bulge with bilateral paracentral disc protrusions at T2-T3 contributing to moderate spinal canal stenosis with ventral cord contact and "severe right foraminal narrowing with contact of the exiting right T2 nerve root." [Filing No. 13-24 at 69.] "We have recognized that an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). The significance of the new MRI showing more severe impingement at a different level altogether than the 2010 x-ray is not for the Court to decide. However, given that

the ALJ does not even accurately summarize the objective imaging anywhere in the decision and further that the MRI was never submitted to expert review, the Court finds that remand is necessary to evaluate the updated record for medical equivalence.

**B. Whether the ALJ Critically Erred in Assessing Mr. Black's RFC**

Mr. Black makes additional arguments that the ALJ's RFC finding is not supported by substantial evidence, piggy-backing on his arguments above that his combination of impairments supported by the updated record were not adequately evaluated. [Filing No. 17 at 18-19.] To the extent that the Court has already found reversible error with the sufficiency of that evaluation, the RFC will also need further consideration based on the full record. Mr. Black makes other specific arguments that the RFC did not adequately account for his limitations with stooping, maintaining positions, reaching in all directions, and as a result of his mental impairments. [Filing No. 17 at 20-22.] Some of those limitations are supported by the opinion of Mr. Black's treating physician, which the Court will address in the next section. However, where the Court has found independent grounds supporting remand in addition to the issue above, the Court will offer further guidance here.

The ALJ's RFC finding does not adequately account for limitations with bending and stooping. Regardless of the basis, a hypothetical question posed by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." (citing *Young v. Barnhart,* 362 F.3d 995, 1003 (7th Cir. 2004) (additional citations omitted)); *see also* SSR 96-5p, 1996 WL 374183, at *5 (RFC

11

assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. With regard to the effect of postural limitations on the sedentary occupation base, the SSA's rulings explain that:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96-9p, 1996 WL 374185, at *8 (emphasis in original).

The ALJ found that a portion of an assessment from a worker's compensation examiner, Dr. Alban, was "highly probative of the claimant's" RFC and "entitled to considerable weight." [Filing No. 13-2 at 20.] Among the limitations listed by the ALJ as deserving of deference was that "Dr. Alban stated that the claimant's low back precludes repetitive bending, stooping and heavy lifting." [Filing No. 13-2 at 20 (citing Filing No. 13-19 at 31).] The Court can trace how most of Dr. Alban's opined limitations were incorporated into the ALJ's RFC finding (and corresponding hypothetical to the VE). However, the RFC does not include any limitations with bending and stooping. *See* [Filing No. 13-2 at 15.] Given that even the outdated consultants' assessments limited Mr. Black's ability to stoop to occasionally, [Filing No. 13-3 at 16], the limitation could be material to Mr. Black's ability to perform other work at the sedentary exertional level. The limitation supported by the record needs to be adequately accounted for in the RFC finding and properly conveyed to the VE for consideration.

Furthermore, while it does not appear that Mr. Black alleged any mental health limitations in connection with his claim as initially filed, [Filing No. 13-3 at 11], updated treatment records do indicate that he was later diagnosed with an adjustment disorder with anxious mood, [Filing

No. 13-22 at 26]. The ALJ does not mention the diagnosis, nor demonstrate that any possible mental limitations were evaluated. On remand, further consideration should be given to Mr. Black's mental impairments.

### C. Whether the ALJ Erred in Weighing Dr. Robinson's Treating Source Opinion

Mr. Black also argues that the ALJ erred in weighing the opinion of his treating physician, Dr. Robinson. [Filing No. 17 at 23.] "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)). Dr. Robinson provided two opinions, one in the form of a narrative dated May 23, 2016, [Filing No. 13-12 at 75], and the other a medical source statement with specific work-related functional restrictions dated January 24, 2017, [Filing No. 13-25 at 31-36]. The ALJ concluded that "Dr. Robinson's opinion is unpersuasive, has low probative value and carries limited weight." [Filing No. 13-2 at 21.] The ALJ offered several reasons for the weight he gave Dr. Robinson's opinion, that it was based in part on the assumption that Mr. Black has neuropathy that is not objectively verified in the record, the "extreme limitations" do not correlate well with the objective findings, and Mr. Black's activities of daily living show that he is more functional than Dr. Robinson opined. [Filing No. 13-2 at 21.]

Having found remand necessary based on the issues detailed above, the Court need not reach this argument fully and declines to do so here. On the one hand, some of the activities of daily living that Mr. Black has indicated he is capable of performing (*e.g.*, driving, doing laundry, grocery shopping, taking out the trash, and preparing meals, [Filing No. 13-2 at 21]), even if properly considered in the context of how he is able to perform them, do seem to contradict portions of the opinion. For example, Dr. Robinson opined he could "never" reach in all

13

directions. [Filing No. 13-25 at 33.] On the other hand, the Court does not find other aspects of the ALJ's explanation to be persuasive.

For one, the ALJ's reliance on the lack of support for a neuropathy diagnosis is not a good reason to discount Dr. Robinson's opinions. Dr. Robinson did indicate in his narrative that "Mr. Black suffers from neuropathy in his lower extremities since 2011 possibly secondary to diabetes." [Filing No. 13-12 at 75.] The ALJ concluded that the record supported that Mr. Black was precluded from being on his feet more than two hours in an eight-hour day even without considering neuropathy. [Filing No. 13-2 at 15.] However, Dr. Robinson also explained that Mr. Black's "most debilitating problem is chronic pain secondary to spinal surgery of his cervical spine." [Filing No. 13-12 at 75.] In the medical source statement providing opined functional limitations, Dr. Robinson supports additional restrictions with lifting/carrying and particularly fingering by referencing Mr. Black's history of spinal fusion due to a central disc protrusion, diffuse spondylosis, and decreased grip strength that has progressed since 2004. [Filing No. 13-25 at 33.] The ALJ's first stated reason for discounting Dr. Robinson's opinion seems entirely inapplicable to these potentially material opined limitations.

Secondly, the ALJ's recitation of the objective medical evidence is flawed for reasons mentioned above which are repeated in this portion of the decision, including that Mr. Black "does not have muscle atrophy." [Filing No. 13-2 at 21.] Additionally, the ALJ's summary that "[n]o muscle spasms are present" and "[n]o tenderness has been present," [Filing No. 13-2 at 21], are contradicted by the record, [Filing No. 13-19 at 25 ("slight right paracervical spasm"); Filing No. 13-17 at 21; Filing No. 13-17 at 27; Filing No. 13-19 at 24; Filing No. 13-11 at 10; Filing No. 13-11 at 65; Filing No. 13-26 at 61; Filing No. 13-27 at 37 (all describing tenderness to palpitation).] Further consideration of Dr. Robinson's opinion is warranted on remand.

14

**D. Remaining Arguments**

Mr. Black also argues that the ALJ erred in assessing his credibility, [Filing No. 17 at 27], and that the VE's testimony concerning other work is not supported by substantial evidence, [Filing No. 17 at 29]. Again, the Court declines to reach these arguments completely. Given the Court's concerns with the ALJ's treatment of the opinion evidence and evaluation of the updated evidentiary record, Mr. Black's credibility should be reevaluated based on the limitations supported by the complete record. Furthermore, recognizing that Mr. Black has different representation now than at the hearing, on remand his current representative will be afforded the opportunity to challenge the VE's testimony, where necessary and appropriate.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Mr. Black benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 6/1/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel